**Alan Stuart Graf**, P.C.
Alan Stuart Graf OSB # 92317
Email:  peopleslawyer@qwest.net
Northwest Constitutional Rights Center
1020 SW Taylor St., Ste. 370
Portland, Oregon 97205
Telephone:  (503) 452-2375
Fax:  (503) 464-9821
Of Attorneys for Plaintiff

FILED'03 AUG 20 15:23USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

WILLIAM S. ELLIS, MIRANDA MAY,
RANDALL C. LYON,

Plaintiffs,

v.

CITY OF PORTLAND, MAYOR VERA
KATZ, POLICE CHIEF MARK
KROEKER,individually and in his official
capacity as the CHIEF of the PORTLAND
POLICE, SGT. MARK W. KRUGER,
COMMANDER ROSIE SIZER,
COMMANDER DEREK FOXWORTH,
OFFICER LEO BESNER, OFFICER RYAN
S. COFFEY, OFFICER LARRY GRAHAM,
SGT. DAVINCI ELMORE, SGT. FRANK R.
GORGONE, SGT. DAVID T. MEYER, SGT.
DANIEL J. ANDREW, OFFICER ERIC W.
KAMMERER, OFFICER DARREN C.
ROESER, OFFICER TIMMY EVANS,
OFFICER STEPHEN G. ENDICOTT,
OFFICER JOHN DOE ODETA, DOES # 1-2
(PORTLAND'S POLICE BUREAU
RESPONSE TEAM MEMBERS, LYON
INCIDENT), DOE # 3 (PORTLAND POLICE
OFFICER, ELLIS INCIDENT), DOES # 4-
14 (PORTLAND POLICE OFFICERS,
ELLIS INCIDENT), DOES 14 -24 (RAPID
RESPONSE TEAM FOXTROT SQUAD
OFFICERS),DOES 25 - 65 (ALL
INCIDENTS)
Defendants.

Case No. CV '03    1134   SI

**COMPLAINT**

Civil Rights
Supplemental State Claims
Injunctive Relief
Damages

Jury Trial Demanded

## **INTRODUCTION**

# 452345

## INTRODUCTION

1.      Plaintiffs are citizens of Oregon who were exercising their First Amendment rights in downtown Portland on March 20, 2003 and March 25, 2003. Plaintiff Randall Lyon is a KATU engineer who was covering the protests.  At all times he followed the letter of the law.  Plaintiff Miranda May and William Ellis were protesting peacefully and legally. All Plaintiffs were exercising their First Amendment rights of free speech and freedom of the press.  All of these rights were infringed upon and violated by the violent and illegal activities of the Portland Police Bureau and its employees.

2.      The Portland Police Bureau has a pattern and practice of flagrantly violating peaceful demonstrators' First Amendment Rights and violating the rights of the press and using excessive force in demonstrations held in Portland, Oregon on a continuing basis.

3.      Plaintiffs seek compensatory and punitive damages pursuant to 42 U.S.C. § 1983 and compensatory damages from the City of Portland pursuant to the Oregon Tort Claims Act.

4.      Plaintiffs seek injunctive relief specifically in the form of a court ordered and court appointed civilian review board separate, independent and apart from the Portland City Council with investigatory authority, subpoena power, the power to compel testimony and the power to make ultimate findings and impose discipline.

5.      Plaintiff seek injunctive relief in the form of a court ordered ban on the use of chemical weapons and batons for crowd control of peaceful demonstrations.

## JURISDICTION

6.      This court has jurisdiction over the subject matter of this action pursuant to Title 28, U.S.C. §§ 1331, 1332, and 1343.

7.      The claims upon which this suit is based occurred in the judicial district of Oregon.

Page 2- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

8.    Plaintiffs are informed and believe, and on that basis allege, that each of the named Defendants reside and work in this judicial district.

9.    Plaintiffs filed a valid and timely tort claim with the City of Portland, acknowledged by letters dated April 24, 2003 from Randy Stenquist of the City of Portland Office of Management and Finance Risk Management Division.

## PARTIES

10.    Plaintiff Lyon is an engineer for KATU and a resident of Portland, Oregon. On the night of March 20th, 2003, Lyon was working with the KATU news team. That evening, the KATU news team was covering a demonstration against the United States attack on Iraq in downtown Portland.  For no legitimate reason, he was struck in the right temple and shoved into the news van by two different police officers. Plaintiff assaulted no one, violated no laws, and was completely undeserving of the treatment inflicted upon him.

11.    Plaintiff Ellis is a resident of Portland, Oregon and was a participant in a peaceful demonstration in downtown Portland against the United States attack on Iraq on March 25,2003. For no legitimate reason he was detained, seized, arrested, battered, and pepper-sprayed. Plaintiff Ellis assaulted no one, violated no laws, and was undeserving of the treatment inflicted upon him.

12.    Plaintiff May is a resident of Portland, Oregon and was a participant in a peaceful demonstration in downtown Portland against the United States' attack on Iraq on March 25, 2003. For no legitimate reason she was pepper-sprayed. Plaintiff May assaulted no one, violated no laws, and generally was undeserving of the treatment inflicted upon her.

## DEFENDANTS AS TO ALL THREE INCIDENTS

13.    Defendant City of Portland is an Oregon municipal corporation.

14.    Defendant Vera Katz is the Mayor and Police Commissioner of the City

Page 3- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

of Portland; as such she is the final decision-maker for the city with respect to the operation of its police bureau. At all relevant times she was acting under the color of law.

15.    Defendant Mark Kroeker is the Chief of Police for the City of Portland; as such he is in charge of the Portland Police Bureau and its operation. At all times he was acting under the color of law.

16.    Defendant Rosie Sizer is the Commander of Central Precinct for the Portland Police Bureau; as such she is in a position to command the operations of the Portland Police for downtown demonstrations. At all times she was acting under the color of law.

17.    Defendant Derrick Foxworth is the Commander of Northeast Precinct for the Portland Police Bureau, and was designated Incident Commander for demonstrations in the city of Portland by Mayor Vera Katz under Operation Safe City during the period after the United States' attack on Iraq, commencing March 19, 2003. At all times he was acting under the color of law.

18.    Defendants Does # 25 -65 , upon belief and information, are and were, officers of the Portland Police Bureau, and/or other actors or officials in a position of supervision or authority over police officer defendants, and/or who acted in concert with the defendants named below, and/or who devised or approved the police response which was specifically designed to target the demonstrations on March 20th and March 25th, 2003 with false arrests, and excessive force, and at all times relevant to this complaint, acted under color of law as agents of the city of Portland and with its full consent and approval.

## ADDITIONAL DEFENDANTS : PLAINTIFF LYON'S INCIDENT

19.    Doe # 1, officer Portland Police Bureau Rapid Response Team, acting under the color of law at all times relevant to this complaint.

Page 4- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

20.    Doe # 2 officer Portland Police Bureau Rapid Response Team, acting under the color of law at all times relevant to this complaint.

## ADDITIONAL DEFENDANTS : PLAINTIFF ELLIS' INCIDENT

21.    Defendants Leo Besner, is and was an officer of the Portland Police Bureau, acting under the color of law at all times relevant to this complaint.

22.    Defendant Doe # 3, is and was an officer of the Portland Police Bureau, acting under the color of law at all times relevant to this complaint.

23.    Defendant Does # 4 -14 are officers of the Portland Police Bureau who participated in the arrest, assault and battery of Plaintiff Ellis on March 25, 2003. Does # 4 - 14 were at all times relevant to this complaint, acting under color of law.

24.    Defendants Davinci Elmore, Frank R. Gorgone, David T. Meyer, Daniel J. Andrew, are, and at all times relevant to this complaint, were sergeants of the Portland Police Bureau, acting under the color of law.

25.    Defendants Erik W. Kammerer, Daren C. Roeser, Timmy Evans, Stephen G. Endicott, and John Doe Odeta, are and were at all times relevant to this complaint, officers of the Portland Police Bureau acting under the color of law.

26.    Defendants Does # 15 - 24 , upon belief and information, are and were, officers of the Portland Police Bureau's Rapid Response Foxtrot Squad, and at all times relevant to this complaint, acted under color of law.

## ADDITIONAL DEFENDANTS : PLAINTIFF MAY'S AND ELLIS' INCIDENTS

27.    A. Defendant Mark W. Kruger, is and was at all times relevant to this complaint, a sergeant of the Portland Police Bureau, and at all times relevant to this complaint, acted under the color of state law.

B. Defendant Joseph Hanousek, is and was at all times relevant to this complaint, an officer of the Portland Police Bureau, and at all times relevant to this

Page 5- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

complaint acted under the color of the law,

28.    In doing the things alleged in this complaint, all the Defendants listed above, each acted at times, as the agent, servant, employee, and in concert with each of the remaining Defendants.

## STATEMENT OF FACTS COMMON TO ALL PLAINTIFFS

(Policy, Custom, and Failure to Train, Supervise, Hire and/or Hold Accountable)

29.    "Operation Safe City" was a plan implemented by the City of Portland for the purpose of providing directives to the Portland Police as to how to handle anticipated political demonstrations in the streets of Portland in response to the Iraq war.

30.    Demonstrators, or those perceived to be demonstrators, were routinely pepper-sprayed, clubbed, subjected to full custodial arrests for trivial offenses such as jaywalking, and otherwise subjected to gratuitous force and violence on the part of Defendant Officers and Does throughout "Operation Safe City", including on March 20th and 25th, the dates on which the incidents which gave rise to this complaint occurred.

31.    The directives to use force, and the use of any force by Defendants against Plaintiffs Lyon, Ellis, and May was unnecessary and employed to punish the plaintiffs for exercising their constitutional rights.

32.    No reasonable police officer or police supervisor could have believed that the use of such force against the plaintiffs, as described in this complaint, was reasonable because such use of force violates the express written directive of the Chief of the Portland Police Bureau, Mark Kroeker as stated in the following paragraph

33.    In a follow-up report regarding the use of force at the "May Day" demonstration in 2000, Defendant Portland Police Chief Mark Kroeker directed that less-than-lethal force be deployed only against **"individuals were involved in criminal conduct."**  All defendants were aware of this directive, yet wantonly disregarded the

Page 6- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

directive in their conduct and actions towards the Plaintiffs.

34.     Although in direct violation of written policies and directives, the conduct of the defendant police officers and supervisors was also pursuant to the unwritten practices and customs of the Portland Police Bureau to use less-than-lethal force to suppress free speech and peaceful demonstrations. Defendants have a history of violating and continue to regularly violate the written policies and directives regarding the use of less-than-lethal force, particularly in response to political protesters.

35.     No reasonably competent police officer could have believed that he or she had the authority to attack law abiding and peaceful plaintiffs Lyon, Ellis, and May with chemical weapons, pepper spray bottles, elbows, knees and long batons.

36.     Although the defendant police officers and supervisors were clearly violating written police policies and directives, as well as plaintiffs' civil rights, they believed they could do so with impunity. Defendants believed they could do so with impunity because it is the practice and the custom of the City, through its Mayor, Chief of Police, and other commanding officers to fail to train, punish, or otherwise condemn officers who use excessive force.

37.     Despite notice of serious problems with police misconduct from community groups, Defendant Katz's own designated committees, and other respected sources, Defendant Katz has repeatedly failed to train, supervise, discipline and properly hire the police commanders and officers under her control. Defendant Katz has failed to put in place a civilian police review board where civilians have the power to investigate, subpoena witnesses, compel testimony, and make ultimate findings regarding the use of force.

38.     Lack of training, supervision, discipline, lack of proper hiring practices and lack of structural accountability has led to an atmosphere at the police bureau in which officers ignore the law and the rights of persons the police officers come in contact with.

This failure to train, supervise, impose consequences and use the appropriate hiring practices gave the defendant police officers and supervisors the sense that they could use excessive force against the Plaintiffs without fear of adverse consequences. By the practice and custom of failing to train, discipline, or otherwise condemn officers who use excessive force, Defendants City of Portland, Katz, Kroeker, Sizer, as well as unnamed defendants in this case have tacitly condoned the use of excessive force and thereby encouraged and ratified such conduct.

39.     Examples of this practice and custom of condoning excessive force, but not limited to, are the Police Bureau actions against the May Day 2000 protestors and against protestors who demonstrated against George Bush on August 22, 2002. These policies and practices exhibit a reckless and deliberate indifference to the Plaintiffs health, safety, and well-established rights under the First, Fourth, and Fourteenth Amendment.

40.     It was and still is the policy and/or custom of the City of Portland to inadequately and improperly investigate citizen complaints of police misconduct. Instead, acts of misconduct were tolerated by the City of Portland, including but not limited to the acts of misconduct contained within this complaint. The policy/and or custom created an atmosphere where the police have acted with impunity in violating the constitutional rights of Portland citizens.

A. The City Council has admitted that the former Police Internal Investigations Auditing Committee (PIIAC), which served as the governmental agency for many years that handled citizen complaints of police misconduct, was fatally flawed. On July 1, 2001, the City Council replaced PIIAC with a different agency entitled the Independent Police Review (IPR) which was designated as a part of the Auditor's office. The IPR contains a citizen component entitled the Citizen Review Committee (CRC) of nine citizen volunteers which handle appeals of police complaints.

Page 8- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

B. Around the time the Council passed the ordinance enacting the IPR the Council promised the citizens of Portland that the Council would hold a public review and accounting of the IPR one year after its inception.  That promise was not kept.

C. Two years after its inception, many of the CRC members have stated publicly that the system in place is not working and has not fulfilled its promise of real police accountability. Those members plan to resign and/or not reapply for their positions because of they believe that their work towards police accountability has been made futile due to their lack of power within the IPR and IPR process and the lack of independence of the director of IPR who has shown that he is beholden to the Portland Police Bureau and not to the members of the public.

D. Community members and organizations such as, but not limited to,  the Albina Ministerial Alliance, the NAACP, the National Lawyers Guild, the League of Women Voters and Portland Copwatch continue to express deep concerns about the continuing lack of police accountability in Portland particularly in the areas of police violence against citizens, police shootings, racial profiling, and discriminatory conduct against political protestors.

E. All of the Plaintiffs in this lawsuit are aware of the facts stated above and that the system in place, particularly the Independent Police Review, is a sham and failure and will not prevent future bad acts against them by the Defendants in this lawsuit.

F. The City Council, each and every member, including Mayor Vera Katz, Dan Saltzman, Eric Sten, James Francesconi, and Randy Leonard have abdicated their responsibilities to the citizens in Portland, Oregon by failing, again and again, to put in place a system which ensures true accountability for police misconduct and acts as a real deterrent to police bad acts.

G. All of the Plaintiffs are aware of the above stated facts in this section,

Page 9- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

and as a result of that awareness are fearful and apprehensive that the members of the Portland Police Bureau will commit violent acts of aggression and misconduct against the Plaintiffs in subsequent protests or other public gatherings in the future because of the above stated lack of institutional deterrence.

41.    It was and still is the policy and/or custom of the City of Portland to inadequately supervise and train its police officers, including defendant police officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

42.    It was and still is the policy and/or practice to engage in either improper background checks and psychological testing on potential officers or no background checks at all.

43.    As a result of above described policies, practices, customs and omissions, police officers of the City of Portland, including defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

44.    The above described policies, customs, practices and omissions demonstrated and still demonstrate a deliberate indifference on the part of the policymakers of the City of Portland to the constitutional rights of persons within the City.

45.    The above described policies, customs, practices and omissions were a primary cause of the violations of Plaintiffs' rights alleged in this complaint.

46.    As a direct consequence of Defendants' conduct, Plaintiffs Lyon, Ellis, and May have suffered great physical and emotional injuries and a severe limitation of their ability now and in the future to practice and enjoy their First Amendment rights guaranteed to them as citizens of the United States of America and

Page 10- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

the United States Constitution.

## STATEMENT OF FACTS: PLAINTIFF LYON'S INCIDENT

47.     Plaintiff Lyon is an engineer for KATU. On the night of March 20th, 2003, Lyon was working with the KATU news team covering a demonstration downtown Portland. The KATU news team was operating live out of the KATU news truck which was parked on the corner of NW 2nd and Burnside in downtown Portland.  Plaintiff Lyon did not violate any laws.  Plaintiff Lyon had at all times his KATU press-ID prominently displayed.

48.     Around 10:40 PM,  Sgt. Julie Salmon issued a dispersal order to the demonstrators to move from the location they were in.

49.     Following that order, Portland Police Bureau's Response Team "Bravo", "Charlie", and "Echo" squads (hereinafter "Response Team) began pushing, pepper-spraying, and using less-than-lethal weapons against protesters in response to the dispersal order.

50.     In order to get obtain optimal live coverage of the crowd being dispersed in this manner, KATU reporter Dan Tilkin and KATU cameraperson Brian Garvin, climbed on top of the KATU mobile van.

51.     Plaintiff Lyon, as engineer for the live broadcast, remained on the ground, close to the van, in order to feed his co-workers a cable which was necessary to continue the live coverage.

52.     Plaintiff Lyon was in the process of handling cable as the Rapid Response Team (RRT) began passing directly by him.

53.     Suddenly, as Plaintiff Lyon was handling cable, an unidentified RRT officer (hereinafter, Doe # 1) attacked Plaintiff Lyon.

54.     Doe # 1 smote Plaintiff Lyon in the right temple with a longer than usual crowd control baton, violently snapping Plaintiff Lyon's head back.

Page 11- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

55.     Upon being attacked, Plaintiff Lyon yelled "Wait a minute, I'm with the media" to the officers present. The officer attacking Lyon heard this statement.

56.     Seconds later, another unidentified RRT officer (hereinafter Doe # 2) grabbed Plaintiff Lyon by the left collar, and smashed Plaintiff Lyon's  head into the side of the truck.

57.     Plaintiff again clearly expressed "I'm media!" to which Doe # 2 responded "Get your ass back to the rear of the vehicle".

58.     Seconds later, the Response Team passed and Plaintiff Lyon resumed his work (which was necessary to the live broadcast) although he visibly staggered immediately after being assaulted and that evening complained of a severe headache.

59.     During the months after the attack, Plaintiff Lyon continued to suffer severe headaches, cognitive problems, slurring of speech and memory loss which lasted for at least three months after this attack by the police officers.

60.     The police officers above assaulted and battered Plaintiff Lyon as part of a well thought out plan of action put in place by their supervisors and without legitimate purpose or justification, resulting in significant harm to Plaintiff and to his First and Fourth Amendment Rights.

61.     Despite the fact that Officers Doe # 1 and Doe # 2 acted violently and unlawfully towards Plaintiff Lyon, none of the other officers or supervisors present did anything to deter the officers from their injurious activities, resulting in further harm to the Plaintiff.

62.     As a result of the injuries sustained, Plaintiff Lyon is fearful and apprehensive of the receiving the same treatment from the PPB at future demonstrations that he will likely attend as an engineer for KATU.

### STATEMENT OF FACTS : PLAINTIFF ELLIS' INCIDENT

63.     On the morning of March 25, 2003, Plaintiff Ellis was a participant in a

Page 12- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

peaceful demonstration in downtown Portland against the United States' attack on Iraq.

64.    Around 9:20 a.m., Plaintiff  Ellis was walking down the sidewalk, displaying a sign criticizing the United States' attack on Iraq to vehicles traveling on SW Fifth Street. Passers-by included the Portland Police Bureau Rapid Response Team Foxtrot Squad (RRT), riding down the street in a black SUV, hereinafter Defendant Does # 6 - 15.

65.    Defendant Officer Besner, separate from the RRT, noticed that Plaintiff Ellis was displaying his political sign to the RRT and took it upon himself to approach Plaintiff Ellis and demand Plaintiff Ellis' identification as well as to state his name to the officer. Defendant Besner's demand appeared to stem from the officer's unhappiness with Plaintiff Ellis' protected First Amendment activities.

66.    When Plaintiff Ellis did not answer him, Defendant Besner immediately arrested Plaintiff, wrenched his arm and violently threw him into a crowd of other police officers on bicycles who were stopped on the street alongside the SUV carrying the RRT.

67.    In order to avoid injury, Plaintiff Ellis had to leap over the police bicycle that was in his way as he was hurled into the group of police officers. In doing so, he lost his balance. He was then grabbed on either side of his body by Defendant Besner and an unidentified bicycle police officer hereinafter Defendant Doe # 16.

68.    Defendant Besner used his leg to dig into Plaintiff Ellis' thigh and bring him to the ground while Defendant Doe # 16 twisted Ellis' arm and slammed Ellis' head into the sidewalk.

69.    While Plaintiff Ellis was prone and helpless on the sidewalk, Defendant Besner put the full weight of his body against Plaintiff Ellis' neck while hogtying him.

70.    While Plaintiff Ellis lay helpless and dazed on the ground, Defendant Doe # 16 smote Plaintiff Ellis in the back of the head with a canister of pepper-spray,

Page 13- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

drawing blood.

71.     Doe # 16 then sprayed Plaintiff Ellis in the face while he was still helpless and dazed with pepper spray at point blank range.

72.     Defendant Elmore is the leader of the Portland Police Bureau's Rapid Response Team Foxtrot Squad.

73.     Defendant Elmore, and Defendant Officers Gorgone, Meyer, Andrew, Kammerer, Roeser, Evans, Endicott, Odeta, and other unidentified members of the Foxtrot Team, Does # 6 -15, fully dressed in riot gear, lined up in front of Mr. Ellis and his attackers to form a visual wall which prevented the rest of the civilian crowd from being able to observe the officers, named above, torturing Plaintiff Ellis as he lay on the ground.

74.     Defendant Kruger watched other defendant officers attack Plaintiff from a short distance away. Defendant Kruger did nothing to stop the Defendant Officers from attacking Plaintiff Ellis.

75.     Plaintiff Ellis was interrogated in a police vehicle and at the Chinatown processing center. After being interrogated, Plaintiff Ellis was placed in custody at the Portland Police Bureau's Central Precinct.

76.     Plaintiff Ellis asked for medical attention soon after the incident mentioned above and while in custody, but did not receive any treatment for his injuries.

77.     Plaintiff was charged with a non-criminal violation of ORS 162.247 (interfering with a police officer) and released around 8 p.m. This case is scheduled for trial August 25, 2003.

78.     The PPB, at this peaceful, lawful demonstration, created a climate of terror through a well thought out plan of action, without legitimate purpose or justification, resulting in significant harm to Plaintiff and to his First and Fourth Amendment Rights.

Page 14- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

79.    Despite the fact that Officers Besner and Doe # 16 violently and unlawfully assaulted Plaintiff, none of the other Defendants present did anything to prevent the assault on Plaintiff and violation of Plaintiff's civil rights, resulting in further harm to Plaintiff Ellis.

80.    The other named and unnamed defendants engaged in the process of attempting to coverup the actions and violations of the defendant officers who attacked and tortured Plaintiff Ellis.

81.    Plaintiff Ellis is apprehensive and fearful that the PPB will attack and torture him again at subsequent demonstrations that he wishes to attend.

## STATEMENT OF FACTS : PLAINTIFF MAY'S INCIDENT

82.    On the afternoon of March 5, 2003, Plaintiff May was on the corner of 3rd and Washington in downtown Portland, participating in a demonstration against the United States attack on Iraq.

83.    This was Plaintiff May's first time participating in a political demonstration.

84.    Plaintiff May did not violate any laws.

85.    At around 1:30 p.m., Plaintiff May observed City of Portland police officers perform full custodial arrests on at least five people for jaywalking in the crosswalk, two of whom were crossing the street  between the southwest and southeast corners of 3rd and Washington.

86.    Protesters observing the arrests began requesting, in a non-violent manner to the arresting officers to release the accused jaywalkers.

87.    Officer Sarah Taylor, not a defendant in this case, shoved one of the protesters without provocation.

88.    Unprovoked, and without giving warning, Defendants Kruger and Hanousek, along with other defendant officers began indiscriminately pepper - spraying the entire crowd gathered on the southwest corner of 3rd and Washington.

Page 15- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

89.   The crowd immediately moved back.

90.   Plaintiff May, who had been leaning against a signpost, also attempted to move back along with the rest of the crowd, but a newspaper-vending box blocked her backward progress. Plaintiff May remained at the signpost and held on to it in fear of being pepper sprayed.  Plaintiff May was subsequently and immediately hit in the eyes with pepper spray, partially blinding her.

91.   Defendant Hanousek approached Ms. May while she was clinging to the signpost and proceed to attempt to peel her away from the signpost all the while directing shots of pepper-spray into her eyes inches away from her face.

92.   Defendant Hanousek then slammed his elbow into Plaintiff May's neck, causing her to fly backwards into the newsstand and let go of the signpost.

93.   Defendant Hanousek again and repeatedly intentionally sprayed Plaintiff May's face and head with pepper-spray immediately after assaulting and battering her with his elbow in response to Plaintiff May calling out "Peace!".

94.   Defendant Kruger joined in with Defendant Hanousek also spraying Plaintiff May at close range seconds after Plaintiff May called out  "Peace!".

95.   Plaintiff May presented no threat to the officers or anyone else present at the scene.

96.   Plaintiff May is 5'2" tall and weighs 110 pounds.

97.   Defendants Hanousek and Kruger appear to be close to 6' each and weigh about 200 pounds each.

98.   While Defendants Hanousek and Kruger attacked Plaintiff May with pepper spray they smiled and laughed and appeared to enjoy torturing Plaintiff May.

99.   Despite the fact that Defendants Hanousek and Kruger attacked Plaintiff May in a brutal and unlawful manner, none of the other Defendants present at the scene did anything to prevent or stop the assault and violation of Plaintiff May's

Page 16- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

civil rights.

100.    Immediately after being attacked and tortured by Defendants Kruger and Hanousek, Plaintiff May went into convulsions and had to be administered medical assistance by persons trained in medical relief.

101.    Plaintiff May was transported by ambulance to the emergency room at Oregon Health Sciences University, where she was treated by medical personnel.

102.    Plaintiff was traumatized by the treatment and actions of the above named defendants and continues to suffer nightmares and mental trauma from the attack by Defendants Kruger and Hanousek.

103.    The police, at this peaceful, lawful demonstration, created a climate of terror through a well thought out plan of action designed to intimidate and suppress the citizens who attempted to express their rights of dissent. These plans and actions by the Defendants, which did not have any legitimate purpose or justification, resulted in significant harm to Plaintiff and to her First and Fourth Amendment Rights.

104.    Plaintiff has apprehension and fear that the PPB and its employees will engage in similar conduct in the future if she chooses to attend a political demonstration.  Her First Amendment rights have been chilled.

## STATEMENT OF DAMAGES

105.    As a direct and proximate result of the incidents alleged in this complaint, Plaintiffs have sustained injuries and damages including, but not limited to pain, suffering, loss of liberty, injuries to their bodies, as well as severe emotional distress, fear, anxiety, and loss of their First and Fourth Amendment rights, all to their general damage in an amount according to the proof presented at trial.

106.    As a direct and proximate result of the incident alleged in this complaint, as discussed above, Plaintiffs have been compelled to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to

Page 17- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

reasonable attorney fees.

107.   The conduct of all named and unnamed Doe Defendants as alleged in this complaint was willful, malicious, oppressive, and/or reckless and therefore Plaintiffs are entitled to punitive damages according to proof.

108.   As a further direct and proximate result of the acts of the Defendants, and each of them, as alleged herein, Defendants violated Plaintiffs' rights under the First, Fourth and Fourteenth Amendments.

### FIRST CAUSE OF ACTION
Violation of civil rights
Title 42 U.S.C. Section 1983
(All Plaintiffs Against All Individual Defendants and the City of Portland)

109.   Plaintiffs reallege and incorporate herein by reference the allegation set forth in Paragraphs 1 through 108.

110.   As alleged in this complaint, Defendants acted under color of law to deprive Plaintiffs of certain constitutionally protected rights including but not limited to:

(A)   The right not to be deprived of liberty without due process of law;

(B)   The right to freedom of speech;

(©)   The right to freedom of association;

(D)   The right to equal protection of the law;

(E)   The right to petition government for a redress of grievances;

(F)   The right to be free from police use of excessive force;

(G)   The right to be free from discriminatory law enforcement;

(H)   The right to be free from unreasonable searches and seizures;

(I)   The right to be free from the use of cruel and unusual punishment; and

(J)   The right to freedom of the press

111.   As a direct and proximate result of the violation of their constitutional rights,  by Defendants, and each of them, Plaintiffs suffered general and special damages as alleged in this complaint.

Page 18- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

112.    Defendants' conduct was wilful, malicious, oppressive, and/or reckless and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
Violation of Civil Rights
Title 42 U.S.C. Section 1983
(All Plaintiffs against City of Portland, Mayor Vera Katz, Chief Mark Kroeker, Commander Rosie Sizer, Commander Derek Foxworth)

113.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 108..

114.    At all times relevant to this complaint, Defendant Katz acted in her official capacity as Mayor of the City of Portland. Defendant Kroeker acted in his official capacity as Chief of Police of Defendant City of Portland, Defendant Sizer acted in her official capacity as Commander of Central Precinct, and pursuant to a policy of the City of Portland to deprive Plaintiffs and others of their rights secured by the Constitution of the United States during "Operation Safe City, " including, but not limited to their rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution.

115.    At all times relevant to this complaint, Defendant Foxworth acted in his official capacity as police commander of defendant City of Portland, as well as in his official capacity as incident commander at the scene. Furthermore, Defendant Foxworth acted pursuant to City of Portland's policy, pattern and practice to deprive Plaintiffs and others of their rights secured by the Constitution of the United States, including, but not limited to their rights under the First, Fourth, and Fourteenth Amendment.

116.    At all times relevant to this complaint, Defendants Katz, Kroeker, Sizer, and Foxworth, each in their individual capacities as officials of Defendant City of Portland, acted with a design and intention to deprive Plaintiffs of their rights secured by

Page 19- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

the Constitution of the United States and acted with deliberate indifference to Plaintiffs' rights.

117.    The supervisors of the PPB concerned and involved with the actions and incidents alleged above were directly on notice that Defendants, including "Doe" Defendants, including Members of the Rapid Response Team , Defendants Elmore, Kruger, and Gorgone, acted with deliberate indifference to the safety and Constitutional Rights of demonstrators and other members of the public.

118.    Defendant Foxworth was in direct control of all the officers in the field and directly supported and ratified the actions of the other officers under his command despite the obvious illegality and unconstitutionality of their actions.

119.    As a direct and proximate result of the acts described in this complaint, Plaintiffs have suffered general and special damages as set forth in this complaint.

120.    The conduct of Defendants was wilful, malicious, oppressive, and/or reckless and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
Assault and Battery
(All Plaintiffs against Defendants City of Portland, Portland Police Bureau, and all Police Administrators, named and Does)

121.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 108.

122.    As a result of operations plans (including "Operation Safe City") and policies, practices, and orders of the above listed Defendants, named and Does, Plaintiffs were brutally assaulted. Specifically, Plaintiff Lyon was clubbed in the head, slammed into the news van, and made to fear that additional battery and even death were imminently possible. Plaintiff Ellis was struck, pepper-sprayed,

Page 20- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

tackled, battered, and made to feel that additional battery and even death were imminently possible. Plaintiff May was pepper-sprayed, battered, and made to feel that additional battery and even death were imminently possible.

123.    The City of Portland police officers named as well as Does, intentionally used gratuitous, excessive, and unnecessary force as a tactic against Plaintiffs and other actual or perceived demonstrators in order to induce Plaintiffs and others to abandon the demonstration. This force included brutal arrests and detentions, gratuitous and capricious use of blows, batons, pepper spray, and impact weapons, and use of vehicles and other police equipment as weapons. None of this force was required or appropriate for any legitimate police function.

124.    This use of force was mandated by the Sergeants in the field, Defendants Foxworth, Sizer, Kroeker, Katz, and many officers in the field who are currently named in this complaint as "Does 1 - 65", and will be named as soon as known.

125.    As a direct and proximate result of the violation of their constitutional, statutory and common law rights by Defendants, Plaintiffs have suffered general and special damages as alleged in this complaint.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
Conspiracy to Violate Civil Rights
Title 42 U.S.C. Section 1983
(All Plaintiffs against All Defendants)

126.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 108 of this complaint.

127.    At all times material to this complaint, Defendants engaged in an civil intra-departmental conspiracy among themselves, and with other known and unknown persons, the purposes of which were, *inter alia,* (a) to conceal tortious and criminal assaults by police officers of peaceful protesters from the public and press; (b) to falsely accuse persons persons engaging in constitutionally-protected speech of

Page 21- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

crimes; ©) to engage in discriminatory enforcement of the laws, to wit, arresting protesters for such crimes as jaywalking solely because of their political views and/or their exercise of constitutionally-protected speech; (d) to commit battery on persons arrested during protests, in violation of the Eighth Amendment; (e) to terrorize others into not exercising their First Amendment rights of freedom of speech and freedom of assembly, for fear of being battered, sprayed with pepper spray, shot with rubber bullets, kinetic batons, or other less-than-lethal weapons, falsely arrested, or arrested on pretextual charges.

128.   During the course of the conspiracy, the conspirators, acting in concert, engaged in numerous concerted acts to further the purposes of the conspiracy, including, but not limited to, those described in the Statement of Facts of this Complaint

129.   Each act of the conspiracy was ratified by the other co-conspirators, who acted as each other's agents in carrying out the conspiracy. As a direct and proximate result of the conspiracy, Plaintiffs suffered general and special damages as alleged in this complaint.

130.   Each Defendant is jointly and severally liable for the torts of the other members of the conspiracy which were committed in furtherance of the goals of the conspiracy, to wit, to terrorize citizens into forgoing exercise of their First Amendment rights for fear of being battered, pepper-sprayed, shot with less-than-lethal weapons, falsely arrested, or arrested on pretextual charges because of discriminatory enforcement of laws.

131. The conduct of the individual defendants both individually and in concert, was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

Page 22- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

## FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
(As to All Defendants)

132. Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 108.

133.   In carrying out the plan and acts alleged throughout this complaint, Defendants, and each of them sought to cause emotional distress and trauma to Plaintiffs and others, and Plaintiffs did suffer such emotional distress accompanying physical symptoms.

134.   As a direct and proximate result of the violation of their Constitutional rights by Defendants and their other tortious conduct against Plaintiffs, Plaintiffs have suffered general and special damages as alleged in this complaint.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### Negligence
(As to ALL Defendants)

135.   Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 108 of this complaint.

136.   Defendants, and each of them, owed Plaintiffs a duty to use due care at or about the times of the aforementioned incidents.

137.   In committing the aforementioned acts and/or omissions, Defendants, and each of them, negligently breached said duty to use due care, directly and proximately resulting in the injuries and damages sustained by the Plaintiffs as alleged herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### False Arrest
(As to Plaintiff William Ellis and Defendants Tied to his Incident)

138.   Plaintiff William Ellis realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 108.

Page 23- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

140.   Defendants, as named in paragraphs 63 through 81 of this complaint confined Plaintiff Ellis' freedom of movement by falsely arresting, restraining, and detaining Plaintiff Ellis.

141.   Defendants intentionally arrested, restrained, and detained Plaintiff.

142.   Plaintiff Ellis was aware of the confinement.

143.   Defendants' confinement of Plaintiff Ellis was unlawful. Plaintiff violated no laws, threatened neither persons, property, nor public order, and was targeted simply because of his presence and political message.

144.   In committing the act of false arrest, Defendants violated Plaintiff Ellis' constitutional rights of liberty and due process and caused the Plaintiff injuries and damages as alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### EIGHTH CAUSE OF ACTION
**False Imprisonment**
(As to Plaintiff Ellis and Defendants Tied to his Incident)

145.   Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 144.

146.   Defendants, as named in paragraphs 63 through 81 of this complaint detained and restrained Plaintiff Ellis' freedom of movement by falsely arresting and then confining Plaintiff Ellis.

147.   In addition to being battered and falsely arrested, Plaintiff was falsely imprisoned by being unlawfully held in custody over 10 hours. While in custody, Plaintiff Ellis was processed very slowly, and threatened with indefinite incarceration by unknown police officers.

148.   Defendants' detention and restraint on Plaintiff Ellis' freedom of movement was unlawful.

149.   As a direct and proximate result of the false arrest and imprisonment,

Page 24- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

Plaintiff Ellis suffered damages and injuries as alleged in this complaint.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY TRIAL DEMAND

150.   Plaintiff demands a jury trial in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask the Court for the following relief:

To accept jurisdiction of their claims including the supplemental state law claims and to grant their requests for a jury trial of their peers;

To award special damages to compensate plaintiffs for their out-of-pocket medical expenses and lost wages in amounts to be determined at trial;

To award Plaintiffs general damages to compensate them for their physical and emotional pain and suffering from defendants, jointly and severally, in an amount to be determined at trial;

To award Plaintiffs punitive damages from all named Plaintiff and John Does, in an amount to be determined at trial;

To award Plaintiffs injunctive relief, specifically to order the Portland Police to cease and desist from spraying chemical agents and using batons for the control of peaceful protestors and the press;

To award Plaintiffs injunctive relief, specifically for the court to put in place an independent police review board with members of that board appointed by the court or a court appointed special master.  This board should be separate, apart and independent from the Portland City Council and should be a Citizen Based Civilian Police Review Board modeled after the board as recommended in the Mayor's Task Force for Police Accountability contained in the "Majority Report" and as written by and approved of by the Portland Chapter of the National Association for the Advancement

Page 25- ELLIS, et. al.  v. CITY OF PORTLAND, et. al. - COMPLAINT

of Colored People (NAACP), the Portland Chapter of the League of Women Voters, the Portland Chapter of the National Lawyers Guild and Portland Copwatch;

To declare that the Defendants violated the above named constitutional rights and common law rights of all Plaintiffs;

To award Pre- and post-judgment interest on all amounts awarded;

To award Plaintiffs their costs and attorney fees; and

To grant other relief as is appropriate.

DATED this _____20_____, day of August, 2003.

_____

Alan Stuart Graf, PC
Alan Stuart Graf, OSB # 92317
Lead Counsel for Plaintiffs and of
the Northwest Constitutional Rights Center
(NWCRC)

_____

Alan Stuart Graf, PC
Amy Van Horn, OSB # 02011
for Plaintiffs and of the NWCRC

_____

Steven Sherlag, OSB #93103
for Plaintiffs and of the NWCRC

_____

Aaron Robert Varhola, OSB # 97420
for Plaintiffs and of the NWCRC

_____

David Stewart, OSB #98108
for Plaintiffs and of the NWCRC